IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MICHAEL JOHNSON, )
 )
    Plaintiff, )
 )
v. ) CV96-H-15-S
 )
ROCHE BIOMEDICAL LAB, )
 )
    Defendant. )

**ENTERED**

MAY 2 7 1997

## MEMORANDUM OF DECISION

Presently before the Court is the April 3, 1997 motion for summary judgment filed by defendant. Pursuant to an Order entered April 3, 1997, the motion was deemed submitted, without oral argument, on May 1, 1997.

### I. Procedural History

Plaintiff commenced this action by filing a complaint in this Court on January 3, 1996. The complaint alleged that plaintiff had been employed by defendant, and had been subjected to various adverse employment actions, including termination, because of his race. Plaintiff sought relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq., and 42 U.S.C. § 1981. The complaint also purported to be based on the Americans with Disabilities Act, but there were no allegations in the complaint that plaintiff was disabled or that he was discriminated against as a result of a disability.

Defendant answered on June 4, 1996, asserting that its proper name was Laboratory Corporation Holdings of America ("LabCorp"). The answer denied the material allegations of the complaint and asserted various affirmative defenses.

Discovery proceeded, and defendant filed the present motion for summary judgment on April 3, 1997. Defendant has also filed a brief and an evidentiary submission, consisting of excerpts from plaintiff's deposition and an affidavit from Jerry Hart. Plaintiff, in response, filed an evidentiary submission consisting of excerpts from his own deposition, his own affidavit, and an affidavit from Carrie Williams. Plaintiff also filed a brief in opposition to the motion for summary judgment.

## II. Standards for Evaluating a Summary Judgment Motion

The Eleventh Circuit has stated that district courts should use caution when taking employment discrimination cases away from the jury by means of summary judgment. <u>Isenbergh v. Knight-Ridder Newspaper Sales, Inc.</u>, 84 F.3d 1380, 1384 (11th Cir. 1996). However, the Eleventh Circuit also recognizes that "[s]ummary judgments . . . are not rare in employment discrimination cases." <u>Earley v. Champion International Corp.</u>, 907 F.2d 1077, 1080. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which is

2

designated 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1). Given the ease of complying with the notice pleading requirements in asserting a discrimination claim, the Eleventh Circuit encourages district courts that "plaintiffs seeking to avoid summary judgment should be strictly held to the requirements of Rule 56(e); the plaintiff must present specific non-conclusory facts that would support a jury verdict against the particular defendant on discriminatory intent." Ratliff v. DeKalb County, 62 F.3d 338, 341 (11th Cir. 1995).

Where a plaintiff's discrimination claim is based on circumstantial evidence, the court employs the shifting-burden framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). First, the plaintiff has the burden of establishing a prima facie case of discrimination.[1] Second, after plaintiff has presented a prima facie case, the burden of production shifts to the defendant, requiring an articulation of

---

[1] In order to present a prima facie case of discrimination, plaintiff must show: (1) that he or she belongs to a protected class; (2) that he or she either applied and was qualified for a position for which the employer was seeking applicants or was satisfactorily performing the duties of the job; (3) that he or she was rejected or terminated; and (4) that, after the rejection, the position remained open and the employer continued to seek applicants for persons of plaintiff's qualifications. McDonnell Douglas, 411 U.S. at 802. Based on O'Connor v. Consolidated Coin Caterers Corp., ___ U.S. ___, 116 S.Ct. 1307, 1310 (1996), plaintiff need not show that the position at issue was filled by a person outside the protected class.

3

some "legitimate, nondiscriminatory reason" for the alleged discriminatory employment action. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). "[I]t is possible for the defendant to present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted." Brown v. American Honda Motor Co., Inc., 939 F.2d 946, 950 (11th Cir. 1991), cert. denied, 502 U.S. 1058 (1992) (quoting Grigsby v. Reynolds Metals Co., 821 F.2d 590, 596 (11th Cir. 1987)).

Once the defendant presents legitimate, nondiscriminatory reasons for its action, then the plaintiff must prove by a preponderance of the evidence that the reasons offered by the defendant are a mere pretext for discrimination, and to persuade the fact-finder that the defendant intentionally discriminated against the plaintiff. McDonnell Douglas, 411 U.S. at 804. In other words, "[a]fter a Title VII plaintiff makes out a prima facie case, and the defendant produces a legitimate nondiscriminatory explanation for its actions, the McDonnell-Burdine presumption drops from the case. "At that point, the inquiry is whether the defendant intentionally discriminated against the plaintiff." Harris v. Shelby County Board of Education, 99 F.3d 1078, 1083 (11th Cir. 1996).

"[B]ecause the plaintiff bears the burden of establishing pretext [for discrimination], he must present 'significantly probative' evidence on the issue to avoid summary judgment." Isenbergh v. Knight-Ridder Newspaper Sales, Inc., 97 F.3d 436,

4

444 (11th Cir. 1996) (quoting Young v. General Foods Corp., 840 F.2d 825, 829 (11th Cir. 1988) (other citations omitted) (alterations in original). "At the summary judgment stage, once an employer articulates a legitimate, nondiscriminatory reason for the discharge, the burden shifts back to plaintiff to raise a genuine factual question as to whether the stated reason is mere pretext." Cortin v. Southland Int'l Trucks, 25 F.3d 1545, 1550 (11th Cir. 1994); Hairston v. Gainesville Sun Publ. Co., 9 F.3d 913, 920 (11th Cir. 1993).

Plaintiff may prove that the defendant intentionally discriminated against him either "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy or credence." Carter v. City of Miami, 870 F.2d 578, 584 (11th Cir. 1989). "If the defendant's proffer of credible, nondiscriminatory reasons for its actions is sufficiently probative, then the plaintiff must come forward with specific evidence demonstrating that the reasons given by defendant were a pretext for discrimination." Brown, 939 F.2d at 950. "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, non-discriminatory reasons for its actions." Isenbergh, 97 F.3d at 444 (quoting Young, 840 F.2d at 830).

III. Relevant Undisputed Facts

LabCorp operates a medical testing facility in Birmingham, Alabama to conduct tests for clients in Alabama, Mississippi, and Florida. (Hart Aff.). Approximately 650 people are employed at LabCorp's Birmingham facility, which is operated in three shifts, 24 hours per day. (Id.).

Plaintiff was hired by LabCorp as a custodian on August 23, 1991. (Johnson Depo. at 79-80). In May 1994, plaintiff applied for a position in LabCorp's customer service area as a courier. (Id. at 81-83). Plaintiff was interviewed by Ernest Trammel for the position, and was transferred as he requested. (Id. at 84; Hart Aff.). He was assigned to work the second shift, and worked from about 4:30 in the afternoon until about 10:30 or 11:00 p.m., three days a week. (Johnson Depo. at 90).

Plaintiff's job as a courier required him to pick up various medical specimens from hospitals and physicians' offices and deliver them to LabCorp for testing. (Id. at 86; Hart Aff.). Plaintiff would report to work, get an ice chest to keep specimens in, and receive a car assigned to him by LabCorp. (Johnson Depo. at 88). After this, he would visit all of the stops assigned to his route at particular times to pick up specimens. (Id. at 88, 157).

LabCorp held bi-monthly courier meetings, which occurred at 7:00 a.m. (Hart Aff.). Plaintiff alleges that he was

6

discriminated against by being excluded from those meetings. (Johnson Depo. at 139-45). LabCorp does not require second-shift couriers to attend those meetings, because most second-shift couriers had daytime jobs that would conflict with the 7:00 a.m. meeting time. (Hart Aff.). In fact, while plaintiff was employed at LabCorp, he held a daytime job at the University of Alabama at Birmingham, where he was required to report to work at 7:00 or 8:00 a.m. (Johnson Depo. at 31-33). However, LabCorp did not prohibit any courier from attending these meetings, and the meeting times were posted. (Hart Aff.). Both black and white employees attended the meetings. (Id.).

Plaintiff also testified in his deposition that he was discriminated against because he was routinely given older cars to drive, while white employees received newer cars. (Johnson Depo. at 94). However, it is undisputed that LabCorp does not assign specific cars to second-shift couriers. (Id. at 99; Hart Aff.). Instead, the cars are assigned to second-shift couriers as the day shift couriers finish their runs and return them to LabCorp. (Hart Aff.). Plaintiff testified that this arrangement caused him to have to wait for a car on occasion, but plaintiff also stated that the cars were assigned on a first-come, first-served basis, and he knew of no instance in which a white employee arriving after him received a car ahead of him. (Johnson Depo. at 103).

On August 18, 1994, plaintiff was counseled regarding some

7

performance problems perceived by his LabCorp supervisors. (Johnson Depo., DX5). The counseling report read in part as follows:

> I have talked to Michael about missing Urology Assoc. lock box on 8-9-94 & leaving specimens from Jasper lab in #2 car overnite on 8-8-94 -- Mike is not following his route schedule properly -- his work shift ends at 9:55P -- on Wed. nite 8-17-94 he brought in 31 specimens at 12:25 AM creating a hardship on 3rd shift accessioning. Also overtime was unauthorized.

(Id.). The report warned that "any other irresponsible action from Mike will be cause for suspension or termination." (Id.). Although plaintiff testified in his deposition that he recalls receiving this reprimand, he denied leaving any specimens in the car overnight. (Johnson Depo. at 198-201). He did, however, acknowledge that he worked until 12:25 a.m. on August 17, 1994, and he gave two seemingly contradictory answers about whether he had missed the Urology Associates lock box on August 8, 1994. (Id.).[2]

Plaintiff was reprimanded on October 6, 1994 for mis-labeling specimens and for failing to check for a specimen that had arrived at the airport. (Johnson Depo., DX7). Plaintiff testified that he did not remember that incident. (Id. at 226-

---

[2]When asked about whether plaintiff missed this pick-up, plaintiff first answered, "I don't think I missed it." (Id. at 199). However, plaintiff answered a subsequent question by saying that his supervisor "said that I had missed this lock box, which I did miss the lock box." (Id.).

27).

Plaintiff received another written reprimand on December 16, 1994. (Id., DX8). It read, in part, as follows:

> Mike missed a regular scheduled lock box pick-up at UAB Family Practice. He also missed a reg. scheduled pick up at Dr. Strickler's office. Mike had forgot to take reports and Path. slides to the Jasper lab several times and had lost key to Jasper lab two times.
> * * *
> Mike was told that missing Lock-box pick-ups was a serious matter and could not be tolerated. He was warned that another incident could result in termination.

(Id.). Plaintiff disputed that he missed any pickup at the UAB Family Practice center, but did admit that he missed a pickup at Dr. Strickler's office and that he did lose the key to the Jasper lab and failed to take reports and slides there on one occasion. (Id. at 228-36).

On December 29, 1994, plaintiff was involved in some sort of automobile accident while driving his route that left his car with a bent wheel. (Id., DX9). Although he was not authorized to contact the car rental agency to procure a new car, he did so, and the rental company came to the accident scene, picked up the damaged car, and gave plaintiff another car. (Id.). Plaintiff did not report this incident to anyone, and received a written reprimand as a result. (Id.).

On January 5, 1995, a first-shift courier reported to LabCorp that he found a specimen that had been left overnight in

9

the car that plaintiff had used the previous evening. (Hart Aff.). Plaintiff's route sheet showed that he had made a pickup at St. Vincent's Hospital at 9:37 p.m., and the specimens reportedly found in the car were taken at 8:00 and 8:14 p.m. (Id., Ex. A). When confronted about this by his supervisor, Ernest Trammell, plaintiff denied leaving the specimens in the car, but Trammell did not believe him and terminated him on January 5, 1995. (Johnson Depo. at 246, 248). Plaintiff continues to deny that he left any specimens in his car on the night of January 4, 1995. (Johnson Aff.).

Plaintiff, both in his affidavit and his deposition testimony, stated that his supervisors were rude to him and spoke to him in a harsh tone of voice. (Johnson Aff.; Johnson Depo. at 93). However, plaintiff did not recall whether his supervisors ever spoke rudely or raised their voices to any other employees, white or black. (Johnson Depo. at 96-97). Plaintiff also testified that this rude behavior was not constant, but he could not recall whether the rude tone of voice accompanied reprimands or not. (Id. at 93-94).

Finally, plaintiff has submitted the affidavit of Carrie Williams, who worked as a courier at LabCorp from 1986 to 1994. Williams' affidavit concludes that racial discrimination was rampant at LabCorp, based on episodes of alleged different treatment accorded to white and black employees. (Williams Aff.). However, many of the specific instances of "different

10

treatment" mentioned in the affidavit do not show any difference in treatment between white and black employees. For example, Williams states that she was assigned a route on which she had to lift heavy boxes. However, there is no allegation that white employees were exempted from heavy lifting. In addition, Williams asserts that the couriers' supervisor, Ernest Trammell, once called a black employee at home and threatened to lay him off unless he came in to work. However, there is no assertion in the affidavit that Trammell did not threaten white employees similarly. Williams also asserts that several similarly-situated white employees committed infractions similar to those plaintiff allegedly committed, and were not disciplined. The Court will discuss this aspect of Williams' affidavit below.

## IV. Analysis

Plaintiff's complaint and deposition allege various incidents of racial discrimination, including the alleged discriminatory assignment of cars and plaintiff's alleged exclusion from courier meetings. In addition, plaintiff's complaint contains a claim that plaintiff was subjected to racial harassment at LabCorp. Plaintiff's brief in opposition to the motion for summary judgment does not mention any of these claims, and instead focuses on a claim that LabCorp applied its disciplinary rules to plaintiff in a discriminatory way.

11

Although plaintiff appears to have abandoned his remaining claims, the Court will briefly explain why summary judgment is due to be granted with respect to those claims, and the Court will then turn to a discussion of plaintiff's discipline and discharge claim.

Initially, the Court observes that there is no evidence in the record that even approaches a showing that plaintiff was subjected to a racially hostile work environment. In order to prevail on a racially hostile work environment claim, plaintiff must show, among other things, that he was subjected to harassment that was "sufficiently severe or pervasive to alter the conditions of [his] employment." Watkins v. Bowden, 105 F.3d 1344, 1355 (11th Cir. 1997). Here, plaintiff testified in his deposition that, on occasion, his supervisors were rude to him or raised their voices to him. Plaintiff did not recall any racial epithets, and did not recall whether the supervisors were similarly rude to white employees. Plaintiff's testimony shows that his work environment at LabCorp was not marked by pervasive racial harassment, and so LabCorp is due summary judgment with respect to plaintiff's hostile environment claim.

Plaintiff's claim that automobiles were assigned in a discriminatory way is also without merit. The undisputed evidence in the record is that night couriers were not assigned specific automobiles, and instead received cars as daytime couriers turned them in. Plaintiff testified that he could not

12

recall any instance in which a white employee received a car assignment ahead of him. Thus, the evidence fails to show any discrimination in the assignment of cars, and LabCorp's motion for summary judgment must be granted with respect to this claim.

Plaintiff also testified that he was excluded from the courier meetings held by LabCorp because of his race. However, the undisputed evidence in the record indicates that LabCorp did not require night couriers to attend these meetings because many night couriers had daytime jobs that prevented their attendance at the 7:00 a.m. meetings. In fact, plaintiff testified that he had a full-time job at UAB at the same time that he worked at LabCorp, and was required to be present for work at UAB between 7:00 and 8:00 in the morning. In addition, it is undisputed that notices of the courier meeting were posted, and that night couriers (both white and black) attended those meetings. The record fails to show any basis for discrimination with respect to the meetings, and LabCorp is due summary judgment with respect to that claim.

Finally, the Court addresses plaintiff's contention that LabCorp disciplined and fired him in a discriminatory manner. Plaintiff advances two arguments in support of this claim. First, plaintiff asserts that he was actually innocent of some of the infractions for which he was disciplined, although he admits certain other violations of company policy. However, this argument cannot avail plaintiff, because "[t]he law is clear

13

that, even if a Title VII claimant did not in fact commit the violation with which he is charged, an employer successfully rebuts any prima facie case of discrimination by showing that it honestly believed the employee committed the violation." Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir. 1989). Accord Nix v. WLCY Radio / Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984). Here, LabCorp has introduced evidence that it believed that plaintiff had committed all of the infractions for which he was disciplined, and plaintiff has produced no evidence whatsoever that LabCorp's belief was pretextual or unsupported.[3] Plaintiff's assertion that he did not, in fact, leave specimens in the car or miss specimen pick-ups does not support any inference of discrimination.

Plaintiff also attempts to support his assertion of discriminatory application of disciplinary rules by pointing to the affidavit of Carrie Williams. That affidavit asserts that three white employees committed infractions similar to those plaintiff allegedly committed, but that those white employees were not disciplined.

In order to make out a claim of discrimination based on the application of disciplinary rules, a plaintiff must introduce

---

[3]In fact, the Hart affidavit establishes that LabCorp received notice from a daytime courier that he found specimens that had been left overnight in the car assigned to plaintiff the previous night. Plaintiff advances no argument that suggests that LabCorp's reliance on this report was a pretext for discrimination.

14

evidence that a white employee committed "nearly identical" infractions, but was not terminated. Nix, 738 F.2d at 1185. Under this standard, two of the white employees identified in Williams' affidavit were obviously not "similarly situated."

Williams asserts that Bill Stewart, a white courier, had experienced several automobile accidents, but was not discharged. However, the evidence in the record indicates that plaintiff was not disciplined for having an automobile accident, but rather was reprimanded for procuring a new rental car, at company expense, without receiving authorization or reporting the accident to LabCorp. Given this critical distinction between plaintiff's admitted conduct and the conduct of Bill Stewart, LabCorp's failure to terminate Stewart supports no inference of discrimination.

Williams next asserts that Cecil Johns, another white courier, left a specimen in his car overnight on one occasion, but was not disciplined. Again, this conduct is not "nearly identical" to that LabCorp believed plaintiff had engaged in. LabCorp, as a matter of undisputed fact, believed that plaintiff had missed specimen pick-ups on several occasions, had left specimens overnight in his car both before and after being counseled regarding that problem, and had obtained a replacement car from a rental agency after an automobile accident that he failed to report to LabCorp. Plaintiff's conduct was certainly not "nearly identical" to that committed by Cecil Johns. In

15

addition, the Court notes that plaintiff himself was not disciplined on the first occasion that he left specimens in his car overnight. Rather, as the record reflects, plaintiff received counseling on August 18, 1994 that stressed the importance of avoiding such lapses and warned that discipline would occur if plaintiff committed another infraction in the future. (Johnson Depo., DX5). Thus, the evidence in the record shows that plaintiff's first violation of LabCorp's rules, like Cecil Johns' first infraction, did not result in discipline.

The final white employee identified in Williams' affidavit is Gary Sanders. The affidavit's discussion of Sanders reads, <u>in toto</u>, as follows:

> Gary Sanders, a white service representative, left so many specimens with the clients that the clients in his service area threatened to terminate their contract with [LabCorp]. However, Mr. Sanders was not disciplined. Instead, [LabCorp] required me to pick up the specimens in his service area.

(Williams Aff.).[4] This statement in Williams' affidavit suffers from two main flaws that make it useless to plaintiff's claim.

Initially, the Court notes that there is nothing in Williams' affidavit that suggests that Williams has personal knowledge about whether Sanders was disciplined or not. Rule 56(e) of the Federal Rules of Civil Procedure requires that

---

[4] Williams does not identify when these events occurred, and Williams worked as a courier from 1986 to 1994. Thus, it is entirely possible that these events occurred many years before plaintiff even began working as a courier.

16

affidavits filed in opposition to a motion for summary judgment "shall be made on personal knowledge." Rule 602 of the Federal Rules of Evidence require some showing of personal knowledge before a witness may testify about a matter. Nothing in Williams' affidavit suggests any personal knowledge about whether Sanders was subjected to discipline, a matter that is typically confined to discussions between the offending employee and the supervisor.[5] Without such a showing of personal knowledge, Williams' affidavit cannot support plaintiff's claim.

In addition, Gary Sanders' infractions were not "nearly identical" to those LabCorp believed plaintiff had committed. Although Sanders apparently neglected his pick-up duties in a manner similar to plaintiff, plaintiff also admitted that he had contacted the car rental agency to obtain a replacement car after an automobile accident, without obtaining authorization and without reporting the accident. This additional conduct by plaintiff suffices to nullify any assertion that he and Sanders committed "nearly identical" misconduct.

Because plaintiff has failed to produce any admissible evidence that suggests that LabCorp applied its disciplinary rules as a pretext for discrimination, or that it applied those

---

[5] Williams' affidavit does state that Sanders was relieved of his courier duties and Williams was assigned those duties. Although apparently Williams does not know what action LabCorp took with respect to Sanders, the statement that Sanders' duties were assigned to Williams suggests that LabCorp may have demoted or disciplined Sanders.

rules differently to white and black employees, LabCorp's motion for summary judgment is due to be granted. An appropriate Order and Judgment will be entered.

DONE this 27th day of May, 1997.

_____
SENIOR UNITED STATES DISTRICT JUDGE